I'm Justice Kuczynski. I'm joined by Justice Cubbs and we will call case number 1-18-2525, Prospect Heights Fire Protection District versus Illinois Department of Employment Security. Thank you all. We typically in these Zooms, first I'd just like to explain that my colleague, our colleague Justice Smith will be listening to this audio. He is not able to attend with us by Zoom today. Typically what we do is give each side 10 minutes. So the applet starts, gets 10 minutes, no questions, then we ask questions, then the applet 10 minutes, and then questions, and then a rebuttal. So everybody gets a chance to just keep going and we hope that that will reduce the Zoom chatter. So with that being said, if you could introduce yourselves please and state who you're representing. Justina Hanson on behalf of Defendants Appellants, the Illinois Department of Employment Security, its Board of Review, and the Director. Your Honor, Stephen G. Daday and Julie Reppel on behalf of the Prospect Heights Fire Protection District. Ms. Reppel will be arguing for the district. Okay, great. Please begin. May it please the court. The circuit court erred in reversing the Board of Review's final administrative decision because the Board of Review correctly determined that claimant Robert Paisina did not voluntarily leave his job when he was forced to retire under state law, and thus he was not disqualified from obtaining benefits on that basis. After the briefs on appeal were filed, the department discovered, however, that Paisina earned wages exceeding his monthly benefit amount in each of the weeks that he had certified for benefits and thus was not eligible for benefits on that separate basis. As a result, if the court reaches the merits of this appeal, the decision would not appear to have any actual impact on Paisina's entitlement to benefits. And for that reason, we believe that there is no real case or controversy before the court, and this court need not address the merits of this case. And we would therefore ask that the court remand the matter to the circuit court, which suffered under the same jurisdictional impediment with instructions to vacate its decision reversing the final administrative decision of the Board of Review. First, I'll address the jurisdictional issue, which we raised in our motion. The department believes, and the district does not appear to dispute, that there is a jurisdictional impediment to this case based on the fact that the claimant did not receive benefits. When he initially applied for benefits, he qualified for a weekly benefit amount, even taking into account the for benefits for a two-week period in November 2017, but it appears that he obtained other employment and reported wages in excess of $1,400 in those weeks, and so wasn't entitled to benefits for that reason. Because of those wages, he was not unemployed under the Act. And based on that, we believe that a decision on the merits of this case would likely be an advisory ruling. And so this court, as I noted, would not be required to address the merits of this Act. But because the circuit court's decision is unreviewed, we would ask the court to remand to make sure of that decision. If this court reaches the merits, it should the circuit court's decision reversing the final administrative decision is inconsistent with the Unemployment Insurance Act. It's also inconsistent with this court's precedent interpreting section 601A of the Act and with the weight of authority in other jurisdictions addressing a similar issue. With respect to the Unemployment Insurance Act, consistent with the Act's express purpose, which is to alleviate economic insecurity due to involuntary unemployment, section 601A of the Act provides that an individual shall be ineligible for benefits for the weeks in which he or she has left work voluntarily without good cause attributed to the employing unit. The plain language of section 601A focuses on whether the employee chose or intended to stop working. And indeed, department's regulations provide that an individual separate for that for an individual separation from work to be deemed a voluntary leaving, the individual must have the option to remain employed by the employing unit. And that was not the circumstance here. The employee did not have the option of remaining employed with the employing unit. In addition to the plain language of the Act itself, this court's precedent also focuses on whether the claimant intended to leave the employee of the employer. In the Chicago Transit Authority v. Dedrickson case, which we cite in the briefs, this court noted that the Unemployment Insurance Act does not automatically exclude workers who are hired for temporary positions and find themselves unemployed upon the expiration of the employment term from qualifying for benefits. Rather, this court determined in that case that a summer intern whose term with the employer had ended did not voluntarily leave her job. Even though she had agreed to employment to a term that would end in September, that would only cover the summer as a student, she had agreed to employment that covered only the summer term and ended in September. She had later changed her mind during the course of that employment, decided to stop being a employer if she could continue working. The employer did not respond and she left her job pursuant to the fixed duration term of her employment for that reason. This court found that she was entitled to benefits, explaining that 601A was intended to apply only to those situations where the decision of whether to continue working rests solely with the worker. The court further explained that its decision was consistent with precedent, holding that seasonal workers also are not automatically disqualified from receiving benefits, despite the fact that they have agreed to accept employment that is necessarily limited to the specified time of year. And here, as noted, the Board of Review found that the record failed to show that the claimant intended to leave the employee of the employer. Rather, the separation was imposed upon the claimant by the employer because of the statutory requirement that he could not remain employed there upon turning 65 years of age. Thus, under the act, the claimant's separation from employment was not voluntary but mandated by circumstances outside of the employee's control, which is attaining retirement age. In addition to the plain language of the statute and this court's precedent, the weight of authority in other jurisdictions supports the Board of Review's decision. Numerous other states, including Arizona, Florida, Indiana, Kansas, Michigan, New Jersey, New Mexico, and Pennsylvania, have concluded that a person is not automatically ineligible for benefits because they separate from their employer upon reaching mandatory retirement under the terms of the pension provisions of a collective bargaining agreement. Like this court's precedent in Diderotson, those cases focus on the intent of the employee at the time of the separation. There's a split of authority on the issue, and the circuit court relied on decisions from Ohio, Minnesota, Maine, and Kentucky that reached the opposite conclusion. They found the employee who separated from employment as required by a compulsory retirement provision of a collective bargaining agreement voluntarily left and were not entitled to benefits. But those decisions focused their attention on the circumstances existing at the time the employee accepted the job and thus became a part of the collective bargaining agreement or subject to the pension provisions of that agreement. Those cases are inconsistent with the Illinois Unemployment Insurance Act, and they're also inconsistent with this court's precedent in Diderotson. That case makes clear that the relevant factor is whether at the time of separation from employment, the employee intended to leave work or was forced to leave work for circumstances outside of the employee's control. So for that reason, we would ask if the court reaches the merits that it should reverse the circuit court's decision and reinstate the decision of the board of review. Lastly, I would like to briefly address the district's request for sanctions in this matter. When we raised the jurisdictional impediment to the case, they suggested that they should be entitled to attorney's fees because we raised that jurisdictional issue during the pendency of the appeal. And I would just note that sanctions are inappropriate in this case. They're only appropriate in circumstances where a party has filed a pleading motion or other paper that is not grounded in factor law that is interposed for an improper purpose. And those don't apply here. They don't suggest, nor is there any evidence that the department or its counsel acted for any improper purpose. And nothing in the record suggests that we filed any false pleading or any pleading that wasn't grounded in law or fact. Rather, the facts that were at issue in this administrative proceeding and the facts that we raised as raising a jurisdictional impediment to this case were collateral to what was at issue in the administrative proceeding. And as soon as the department and counsel became aware of facts bringing the court's jurisdiction into question, we raised that immediately. And so for those reasons, we would ask that this court either find that there's no jurisdiction here and to find that the circuit court error in finding that the claimant in this case was disqualified for benefits under section 601A of the act. Thank you. Any questions, Justice Cox? Just one or two, maybe. What, Ms. Hanson, is the practical effect of IDES's position in this matter? I mean, thousands of people retire every day for, you know, one reason or another. In this case, it happens to be statutory. What is the practical effect of a decision to allow a retiree to also collect unemployment insurance? And when would that end? Well, in order to collect unemployment insurance benefits, we would argue that the fact that they retired isn't the issue. The issue is whether they involuntarily separated from employment and they would still have to meet the eligibility, the other eligibility requirements of the act. I'm understanding your question. You couldn't just retire and then apply for unemployment benefits because you're not working. You have to meet the eligibility requirements of the act, which means that you have to be looking for work. You have to be available for work. You have to be certifying that you're doing so. And so the only retirees that would be eligible for benefits under the act are those whose circumstances require them to continue working, who wish to continue working, or their circumstances retire them to continue working, and they're continuing to meet the eligibility requirements of the act. So then a retiree at the age of 80 seeks to draw from his or her retirement, but is really not able to work in any other position. So they would not be eligible, but they would be a retiree. But because at 80, are we opening up just another set of concerns now with maybe age discrimination? I'm a little confused or troubled by IDES's position on this issue, frankly. I'm not sure that I understand. Is the concern that, if your concern is that a retiree might choose to seek benefits even though they are retired and not intending to work? Well, at 80, they may not be intending to work. They may be retired, but I guess your position would be that it doesn't matter that they're 80. If they're not meeting the requirement of attempting to acquire other employment, they're automatically ineligible for unemployment insurance. No, but that is the department's... Yes. Regardless of the reason for the separation from the employment, only those individuals who are actively seeking work and who otherwise qualify under the Unemployment Act can obtain benefits. So the claimant would have to be certifying that they are willing and able to work and that they are seeking other employment. They would have to want to be and continue to be able to be in the labor pool. Does it matter that, in this case, the retirement was statutorily imposed? No, Your Honor, because the Section 601A of the Act looks at whether the separation was voluntary. In other words, whether the employee intended to leave work or whether he left that job for reasons that were outside of his control. And if the employee left his job for reasons that were outside of his control but intended to keep working, then that provision would not disqualify him from obtaining benefits. So the employer who pays regularly into the unemployment insurance fund, they're stuck, notwithstanding that the employer had no involvement in the employee's mandated retirement. They're just stuck. I'm not sure I understand. They're stuck paying benefits? They're stuck. They're raising their concern that they're paying, that they may be called upon to contribute to the unemployment insurance fund based on the mandatory retirement of a former employee. Yes, just like any employee would be, just like any employer, you know, contributes to the unemployment insurance fund. But under the Act, the inquiry is not whether the employee intended to leave work. The purpose of the Act is to alleviate the hardships of unemployment, of involuntary unemployment. And so if a worker becomes involuntarily unemployed through no fault of his own and otherwise qualifies for benefits, then the circumstances, whether the employer, you know, whether the separation from work was specifically caused by the employer or just circumstances outside of the employee's, if the relevant consideration is whether the separation from work was caused by circumstances outside of the employee's control, whether the employee had any control over whether, what, over the separating from work. So it's your position, and I'm done, it's your position that this separation was induced or caused by an action of the employer and not the state or not statute. Well, the employer initiated the separation due to the mandatory retirement age. So in that sense, you could, I mean, it's certainly imposed upon the employer and the employee. But under the terms of the Unemployment Insurance Act, the relevant inquiry is whether the employee voluntarily left work, whether the circumstances were outside of the employee's control. Is it your position that the employer then could have simply thwarted the statutory mandate, ignored it? I'm sorry, whether the employer could have ignored the statute. You said that the separation was initiated by the employer. And my question is, is it your position that the employer could simply have thwarted or ignored the statutory mandate as it relates to retirement? We wouldn't suggest that the employer could retain the employee as a firefighter if doing so is in violation of law. We would simply, we simply submit that that's not a basis for excluding that employee from unemployment insurance benefits under the purpose of the act is to alleviate the hardship of involuntary unemployment. The focus of the act is on workers who wish to remain and who, you know, who may need to remain working and to alleviate the economic hardship that they suffer while they are transitioning into a different job when they have left their current job through no fault of their own. And so while, you know, the employer may be forced to cover claims here, even though he might have otherwise been willing to retain that employee, had it not been for the mandatory retirement age, those circumstances shouldn't alter the way that we interpret the Unemployment Insurance Act, given the language of the statutory provision and its articulated purpose. Thank you. Could this employee, was this employee qualified to be a fireman for Prospect Heights or any other fire department district after he reached the age of 65? My understanding is after he reached the age of 65, he couldn't work as a firefighter. Okay, so he wasn't qualified for this job after he reached 65. So he couldn't be actively seeking a job as a firefighter after he reached the age of 65, not only in Prospect Heights, but any place else in Illinois. Is that a correct statement? I think he couldn't go next door to the next suburb over and say, oh, I want to be a firefighter. I believe that's correct, but he could still be looking for work, for work for which he was qualified for the work after he reached the age of 65. Yes. Okay, that is correct then. To continue as a firefighter for the fire protection district. And the cases that you cited, as I recall, those were all based on collective bargaining agreements, not statutes. But here we have a statewide statute, which is significantly different than free bargaining between two sides. The state just said, you cannot be a firefighter after the age of 65 for the health and safety of your colleagues, for the health and safety of the firefighter himself, for the health and safety of the community. It's not acceptable. You can't do it. So there was no free bargaining between the sides that impose this limit. And that could therefore be undone unraveled somehow. This was just a state mandate. So these cases are not really on point, are they? There is that distinction between, you know, the statutory mandate that he can't. Counsel, I mean, do you really think that the firefighters and the fire protection districts went down to the legislature and bargained over this? Or did the legislature just say this is the rule? There's no bargaining. I'm agreeing there is there is a distinction in cases in the sense that the cases within other jurisdictions that we cite are arise in the context of a collective bargaining agreement as opposed to a state law. I'm sorry. Did you go ahead? I accidentally spoke over you. So you're asking us to reverse the trial court, but you want the board decision to stand. Is that correct? The circuit court's decision has the same jurisdictional impediment that we believe that same jurisdictional impediment is present. So if this court declines to reach the merits, we would ask that it vacate the circuit court decision and vacate the administrative decision as well. So if the board decision stands, if we reverse the trial court, then other firefighters who are over the age of 65 and are removed from service because of the statutory limit on age, they could all apply for unemployment insurance. Is that a correct statement? Because the board decision would be the precedent then? Uh, we, we would, uh, the district asked that the administrative decision be vacated as well. And we would agree that that would be appropriate for both decisions, both decisions below to be vacated. And so this issue would simply, you know, not be addressed. All right. Uh, Justice Cobbs, anything else? No, I just, uh, the same would apply to mandatory retirement for law enforcement offices. I, it gets back to my practical effect of the decision, but I have nothing else. I, I just see it as opening a particular floodgate. All right, fine. Ms. Ruppel. Thank you, Your Honor. Uh, good afternoon. Julie Ruppel on behalf of the plaintiff's Prospect Heights fire protection district. Um, I'd first like to direct my remarks regarding the standard of review on appeal. Um, the parties were, um, at issue in their brief over what standards should be applied. And we believe that the appropriate standard here is the DeNovo standard of review, because this is purely a legal issue. It's, um, the court is being asked here to look at the effect of the fire protection district act, um, in combination with the, um, unemployment insurance act. And so, um, although, um, the question of subjective intent has been raised in the briefs, I think it's clear that there's no question of fact as to why the claimant separated from his employment. He did so because of the mandatory retirement age. And so there isn't a question of fact as to intent or to why this happened. It's purely a legal issue as to how the, um, impact of the fire protection district act is construed, um, in connection with the unemployment insurance act. And for, so that reason we would ask that this court apply the DeNovo standard of review. Um, and turning to the legal issues, um, um, before this court, the fire protection district act mandates that all firefighters retire when they reach the age of 65, there is no choice in, um, whether or not a retirement can happen for either the employee or the employer. Um, and I believe that that's, um, the crux of this matter here is that the, neither the employee or the employer have any chance, uh, to make a decision whether or not they want this employment to continue because the state law and the state is the actor that causes the separation of employment. So we would encourage this court to view, um, this issue under section 601A of the unemployment insurance act, finding that the employee voluntarily separated from their position without good cause attributed to the employer. And we think that, um, following that, um, rationale makes sense because in this case, the claimant voluntarily accepted his position with the fire district, um, knowing that one of the, um, conditions of employment is that he must retire when he reaches that age of 65. So he voluntarily accepted, um, that job knowing that that was a requirement. He accepted the benefits that you would get from any job. Um, and so now it's fair to require that he abide by those duties. We also think it makes sense, um, to, to construe the section this way because, uh, we can presume that the claimant intends to follow the law. And so the law requires him to retire. And so that's what he has to do. And so the, the question of subjective intent here really isn't relevant because it's really about what the impact of that fire protection act has upon the unemployment insurance act and nowhere within the language of the fire protection act. Is there any indication that there's, um, any discretion that's available for either the employer or the employee? Um, and because there's no choice in this matter, that's what separates this case from other cases cited by the department, such as the didrickson case or the Doherty case. Both of those cases required the court to look at the intent of the employee who is, um, wanting to stay on in their position. And then the behavior between the employer and the employee, um, in terms of the communication that the employee had with the those inquiries here just simply aren't, um, relevant here because there's no dispute that the retirement happened because of that mandatory age. And so we believe that the focus here has to be on the impact of the fire protection act, but also on a balancing that has to occur between the interests of the state underneath the unemployment insurance act, trying to provide relief for people who find themselves, unfortunately, unemployed with the state's other interest, um, in protecting its citizens and making sure that it has, um, adequate personnel, um, and appropriate, um, procedures put in place to respond to those emergency calls. Um, because this is a, uh, a matter of first impression in this case, um, both parties cited to cases outside of this cited cases that had to do with collective bargaining agreements. And as you're aware, there's a split among the cases, um, among the States, excuse me, as to, um, how those, those matters should be construed. But we also cited to the Richardson and McFadden cases, which, um, in involved, um, looking at the federal civil service commission in terms of a post office employee. And in those cases, it was determined that because it was, um, a mandated, um, federal situation that, um, those individuals were not eligible for unemployment benefits, the logic and the reasoning of those cases, um, hold true here because the claimant accepted his position, uh, knowing the terms and he had no authority or pardon me, the fire district had to, um, allow him to stay analyzing the case as the board of review did, um, is simply incorrect because it doesn't account for the fire protection district act and fails to account for the fact that it's the state that's the actor here. Um, we'd also just like to, um, make clear that we don't believe that there's an issue of misconduct here. Um, that was erroneously, um, brought up in the lower proceedings, um, as an avenue of, um, review, but there's no indication in the record that any misconduct occurred. If I could just address for a moment, um, the, uh, department's motion, um, that it made before this court asking this court to dismiss the appeal as moot. Um, we have not contested that, um, this new information, um, does seem to have the effect of rendering the issue moot. Um, it appears that if this individual, um, is not eligible for benefits, that there is no actual controversy between the parties. We did ask that if this court were to grant that motion that you would unravel, um, the entire proceeding, um, so that there could be no possible precedential effect left by a board of review decision remaining. And, uh, the department has agreed with that. And finally, we did ask this court to impose sanctions in this matter. Um, we made that request under rule one 37. I'd like to also ask this court to consider that under, um, Illinois Supreme court rule three 75, which I think is, um, the appropriate vehicle for requesting sanctions in the appellate court. Um, although we don't believe that, um, opposing counsel filed an improper brief on the merits of this case, or, um, that they had actual knowledge of the document that was attached to their motion dated December 4th, 2017, that indicated that the individual is ineligible. Um, we believe that sanctions are warranted here for the failure to inquire and that the, um, the department had the knowledge that it had rendered the decision, um, that the claimant was ineligible. Um, the district didn't have that knowledge. And, um, there's really been no explanation for why almost two years after, um, that, um, notice was sent out that now it's being brought forth to this court. So if, if this court decides to grant the department's motion, we would ask that you would unwind all of the lowercase, uh, proceedings, as well as to grant sanctions, um, for the failure to bring forth this information. If this court, um, is not going to grant that motion and instead rule on the issues in this case, we respectfully request that this court reverses the board of reviews determination, um, and finds that this employee was ineligible for benefits because they voluntarily left their position without just cause attributed to the employer. Uh, thank you very much. Thank you. I have none. I have none. Uh, Ms. Hanson rebuttal. Um, I would just make a couple of points, your honor. Um, first with respect to, um, researchers frame this as, as a question of the interplay between the fire protection district act and then the unemployment insurance act, but those statutes are not actually in conflict and both can be applied, um, according to their, uh, terms and, and their purpose without, um, any conflict, the, um, the fire protection district act may mandate that firefighters retire upon the age of 65. Um, but that doesn't have any impact on whether the unemployment insurance act, um, would then apply to alleviate any hardships from that, um, you know, from that unemployment. Um, the, the act is specifically designed to address the situations where an employer, where an employee, um, separates from work through no fault of their own and is eligible for benefits and is, is continuing to look for work, um, in order. Um, that's, that's the purpose of the unemployment insurance act and it's not in conflict with the fire protection district act. Um, unless the court has any further questions, we would ask that the court, um, reverse your position that there's no interplay between the two statutes. Both of them govern the facts and govern the outcome in this case. It's your position that the two stats that the relevance, it has relevance to the reason for the separation. Um, exactly. And when you're considering an unemployment insurance, isn't one of the inquiries, I'm sorry, my, I think the audio cut out and I didn't quite hear you. I think it was me. I think it was my audio, but is it, isn't one of the primary inquiries that unemployment ask, uh, an applicant, the reason or the basis for the separation? And in this case, the, the claimant would have to say the reason for the separation is mandatory retirement based under the fire, uh, fire protection act. So how can it have no relevance? How can it not be important to this, to this, to this discussion? Well, while it provides the reason for the separation, it doesn't, um, it doesn't, um, it doesn't mean that the separation from employment was voluntary in the sense that the employee intended to leave work or, or, you know, intended to be unemployed. I have nothing else. Thank you. Uh, ladies, we'd like to thank you both for your wonderful oral arguments and for the fascinating brief that you've prepared. Also the motions, uh, in responses to the question of mootness, this court will take the matter under advisement and we are adjourned for the day. Thank you.